UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA         :

        -V-                                        :        **21 Cr. 267 (RMB)**

**JOHN BLAND,**                              :

        **Defendant.**                         :

------------------------------------------------------------X

## DEFENDANT'S SENTENCING SUBMISSION

                            Federal Defenders of New York
                            Attorney for Defendant
                            **Mark B. Gombiner, Esq.**
                            52 Duane Street, 10th Floor
                            New York, NY 10007
                            Tel. (212) 417-8718

                            Mark B. Gombiner, Esq.
                            Of Counsel

# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director
and Attorney-in-Chief*

October 7, 2021

Honorable Richard M. Berman
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1650
New York, New York 10007

Re:   **United States v. John Bland**
      **21 Cr. 267 (RMB)**

Your Honor:

When John Bland turned nineteen, his life careened off the rails. Up to that point, John seemed to be on the right course. Although his family wasn't rich, John grew up with two working parents and there were no issues of abuse or neglect. His mother was deeply religious and John spent much time with the church. Other than smoking marijuana as a teen-ager, John did not have any disciplinary problems or interactions with the criminal justice system. He graduated from high school on time and began attending college at the State University of New York in Delhi.

Suddenly, everything went wrong. At about the time he started college, John's parents separated and John's father was imprisoned on drug charges. John left school and never returned. Since then, John has sustained several criminal convictions and spent more than four years in state and federal prison.

Although John's adult life has been less than successful, he is still a young man who is not beyond redemption. Most importantly, as demonstrated by the many attached letters, John has the strong love and support of his family, including his fiercely dedicated mother, Geneva Wilson Bland. John is also the loving father of his seven-year old son, Lohgan. Lohgan's mother, Tyler Strawn, is also fully supportive and describes John as an "outstanding father."

Mr. Bland now awaits sentencing after admitting to possessing a firearm after having been convicted of a felony. He pled guilty pursuant to a plea agreement where the parties have stipulated to a guideline range of 30-37 months. The Probation Office agrees with this calculation. Because he was on supervised release at the time of the offense, Mr Bland also faces the prospect of additional sanctions for the underlying conduct.

Honorable Richard M. Berman  October 7, 2021
United States District Judge  Page 3
Southern District of New York

Re:  **United States v. John Bland**
     **21 Cr. 267 (RMB)**

    Given Mr. Bland's history and characteristics and the nature and circumstances of the offense, a sentence modestly below the bottom of the 30-37 month guideline range would be sufficient, but not greater than necessary to achieve the statutory goals of sentencing.

## STATEMENT OF FACTS

**Personal History**

    **A Stable, Happy, Religious Upbringing**

    John Bland had a happy and stable childhood. John is the oldest of three children born to Geneva Wilson and John E. Bland. Mr. Bland's parents were married and both of them were employed. Mr. Bland worked at a car dealership and Ms. Bland had various clerical jobs. PSR, par. 51.

    John recalls having a "normal childhood" with an intact family and adequate financial circumstances. PSR, par. 51. John's mother was quite religious and John had a Christian upbringing, including attending a private Christian high school. John was baptized at an early age and devoted considerable time to his church.

    John's mother describes him as a "good kid" who was kind and sensitive and did not have any disciplinary issues as a child. PSR, par. 57. In a letter to the Court, **Exhibit A,** Ms. Bland confirms her support for her son and John's basically good character.

    John's aunt, the Rev. Rhoda Kinsey, recounts that a child, John was "always happy, and well taken care of all by his parents and all of the family." **Exhibit B.** She also notes that "his presence was always pleasant, even as he grew up, he always wanted to know and see that everyone was ok."

    John's uncle, the Rev. Mannix Kinsey, has similar positive things to say about John's early years. He remembers him as a "serious young man with wisdom beyond his years" and notes that it was a "great opportunity to experience him accept Jesus as his Lord and Savior and to get baptized at an early age." **Exhibit C.**

    John started high school at the Bronx Leadership Academy High School, but later transferred to the Walk in Love Christian Academy, a private alternative school. He graduated on-time in 2010. PSR, par. 72. Ms. Kinsey remembers that he had "such a sense of pride to have completed that goal."

Honorable Richard M. Berman  October 7, 2021
United States District Judge  Page 4
Southern District of New York

Re:   **United States v. John Bland**
      **21 Cr. 267 (RMB)**

**Collapse of John's Family and A Turn Towards Crime**

After graduating from high school, John enrolled at the State University of New York at Delhi. Shortly after he started, John withdrew from school and came back home again.

John's life then fell apart. His mother writes that "shortly after that [John coming home from college] the dynamics of our home life changed." John's parents separated and Mr. Bland was jailed on a drug charge.

Although it is hard to get Mr. Bland to talk about this period in his life, it had a cataclysmically bad consequences for him. Ms. Bland observed that it wasn't until after she and her husband had separated that "I realized John was dealing with the change of our life and the disappointment he felt in himself." Essentially, John responded to the family turmoil by acting out and getting involved in criminal conduct.

In May and July of 2012, John was arrested for selling fraudulent concert tickets. This conduct resulted in a felony conviction for criminal possession of a forged instrument and concurrent sentences of five years probation. PSR, Pars.34 and 35.

Just a year later, Mr. Bland was arrested for possessing a firearm. He was charged federally with being a felon in possession. Mr. Bland pled guilty to the offense and in May, 2014, Judge Swain sentenced him to one year and a day in jail and three years of supervised release. PSR, par. 36. Mr. Bland then served an additional three years in state custody for the crime of Conspiracy in the Third Degree. PSR, par. 38.

**A Loving and Dedicated Father**

On a much more positive note, Mr. Bland began a relationship with Tyler Strawn in 2013. In 2014, the couple had a son, Lohgan, who is now seven. Although they are not married, Ms. Strawn and John have maintained their relationship for the last eight years. Ms. Strawn speaks very highly of John, describing him as "an outstanding father in his son's Lohgan's life." She discusses how much her son misses his dad and how much he hopes for his father to come home soon so that they can do "boy things." **Exhibit D.** Ms. Strawn also believes that John has "so much potential" because he is "intelligent, wise, and very bright."

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

October 7, 2021  
Page 5

Re:    <u>United States v. John Bland</u>  
        **21 Cr. 267 (RMB)**

**Offense Conduct.**

    Mr. Bland was released from New York State custody in October of 2018 and began serving his federal term of supervised release. He was also under dual supervision by New York State Parole. PSR, par. 36.

    For the first year and a half, things went relatively well for Mr. Bland. However, the advent of the pandemic caused Mr. Bland to regress. Confined to his home, he began smoking marijuana again. Mr. Bland reports that he did so out boredom because "everything was closed" and he "felt like he was back in a cell again." PSR, par. 68.

    In February of 2021, the New York State Division of Parole received a tip that Mr. Bland was seeking to buy a gun with some "friends." At the time, John's mother was living in North Carolina and John was staying in the family apartment.

    On the morning of February 11, 2021, the Division of Parole conducted a parole search of Mr. Bland's residence. The officers discovered a handgun under a mattress in one bedroom and some narcotics in another bedroom. PSR, pars. 11-13.

**Plea Agreement and Sentencing Guideline Calculations**

    On July 6, 2021, Mr. Bland pled guilty before your Honor, pursuant to a plea agreement dated June 8, 2021. The plea agreement provides for a base offense level of 14, pursuant to U.S.S.G. § 2K21.(a)(6), because Mr. Bland was a prohibited person at the time of the offense. The offense level is increased by four level because Mr. Bland possessed the gun in connection with the felony offense of possession with intent to distribute a controlled substance. U.S.S.G. §2K2.1(b)(6)(B). With a three level decrease for timely acceptance of responsibility, the Adjusted Offense Level is 15.

    The parties further agreed that Mr. Bland is in Criminal History Category IV. An Adjusted Offense Level of 15 and a Criminal History Category of IV results in a Sentencing Guideline Range of 30-37 months. The Probation Office agrees with these calculations. PSR, par. 90.

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

October 7, 2021  
Page 6

Re:    <u>United States v. John Bland</u>  
       21 Cr. 267 (RMB)

**Post-Arrest Incarceration and Plans for the Future**

    Mr. Bland has been incarcerated at the MDC since February 25, 2021. Because of the COVID pandemic, the eight months he has been there have been unusually difficult. Mr. Bland has been quarantined on several occasions and there have been restrictions on social visiting and program opportunities. Mr. Bland has not had any disciplinary infractions, but reports that he is "sad most of the time as he is anxious to return home." PSR, par. 64.

    Once he is release from custody, Mr. Bland intends to live with his mother in Charlotte, North Carolina. Ms. Bland is working in North Carolina and has a two bedroom, two bath apartment. Mr. Bland will have his own bathroom and bedroom. PSR, par. 58.

    In her letter to the Court, Ms. Bland confirms that she is more than willing to have John live with her. Ms. Bland notes that she speaks to her son daily and has a room for him once he gets out of prison. She expresses the hope that he will get "counseling and skills that will assist him in reentering society" and promises that she will "assist John in being a productive Citizen upon his release." **Exhibit A.**

    John's aunt, Gretchen Wilson, also offers her support. Ms. Wilson (who also lives in North Carolina) and runs a group care home, states that "[i]n conclusion, my nephew is a good man whom I would employ and/or be responsible for in ensuring he makes a successful transition back into society upon being released today." **Exhibit E.**

    For his part, John is eager to be re-united with his mother and family and resume his relationship with his son. John's father taught him auto mechanics as a young man and John has aspirations to start a car-detailing or auto body shop. PSR, par. 83.

**ARGUMENT**

**MR. BLAND'S STRONG FAMILY SUPPORT AND GOOD PERSONAL CHARACTERISTICS WARRANT A SENTENCE MODESTLY BELOW THE STIPULATED 30-37 MONTH GUIDELINE RANGE**

    There is no question that John Bland has the character and the capacity to lead a good, law-abiding life. Up until the point that John's parents separated and his father went to prison, John was, by all accounts, on his way to becoming a successful adult. He had graduated from high school, enrolled in college and was not involved with the criminal justice system.

Honorable Richard M. Berman             October 7, 2021
United States District Judge               Page 7
Southern District of New York

Re: **United States v. John Bland**
       **21 Cr. 267 (RMB)**

       The heart-felt letters from his mother and relatives portray a kind, serious, and religious child and teen-ager. Indeed, as John's uncle recalls, he was a "serious young man with wisdom that seemed beyond his years...optimistic and willing to do what was needed to make his mother proud of him." **Exhibit C.**

       As noted above, John's life reversed course once his parents separated and his father was jailed. Since turning 19, John has been convicted of a number of crimes and spent several years in prison. It seems quite likely that this dismaying and surprising turn-around is the product of John's reaction to the dissolution of his immediate family. This, of course, does not excuse his misconduct, but it does suggest reasons other than dedicated criminality.

       Despite his poor record, there is a substantial basis to believe that Mr. Bland's future will be better. Once he gets out of jail, John will be able to live with his mother–a responsible and dedicated guardian. John also has other family in North Carolina who have offered to supply their guidance and support.

       Mr. Bland's love for his seven-year old son, Lohgan, provides him with an additional incentive to do better. Lohgan's mother, Tyler Strawn, makes clear that John and Lohgan have a very strong bond and that John is a very supportive father. The Rev. Rhoda Kinsey confirms that "He absolutely loves his son more than anything in the world." **Exhibit D.**

       Finally, we note that Mr. Bland faces the possibility of an additional VOSR sentence for the offense conduct . Moreover, his pre-sentence incarceration has been far more harsh because of the COVID pandemic.

       Mr. Bland fully acknowledges that he committed a serious crime and that his offense warrants punishment. Nonetheless, even a sentence slightly less than the 30-37 month guideline range would be twice as much as he received for his prior gun case. In light of all the other circumstances discussed above, such a sanction would be sufficient, but not greater than necessary. Title 18, U.S.C. § 3553(a).

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

October 7, 2021  
Page 8

Re:  <u>United States v. John Bland</u>  
     21 Cr. 267 (RMB)

## CONCLUSION

For the foregoing reasons, the Court should impose a sentence modestly below the bottom of the 30-37 month guideline range.

Respectfully submitted,  
/s/  
Mark B. Gombiner, Esq.  
Attorney for John Bland  
Tel. (212) 417-8718

cc: AUSA Matthew Shahabian